IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR GABIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-6703 |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY, KEVIN JAMES, JOHN | : | |
| DOES 1-10 | : | |

## MEMORANDUM

**KEARNEY, J.**                                                    **February 5, 2026**

A Philadelphian alleges a Philadelphia Parking Authority enforcement officer assaulted him without being provoked. The enforcement officer then allegedly lied to his supervisor and the police resulting in the police arresting the Philadelphian. The police looked at a videotape a few hours later confirming the enforcement officer started the fight and assaulted the Philadelphian. These alleged facts warrant further scrutiny in the proper forum.

We may not be the proper forum after reviewing the amended complaint. The Philadelphian is attempting to turn the enforcement officer's alleged conduct into a civil rights claim against the Philadelphia Parking Authority and adds a series of Pennsylvania state law claims against it. But he has not shown service upon the enforcement officer. He has tried three times to plead claims. The Philadelphian may have a claim sounding in potential conduct by an unserved enforcement officer, but he has yet to plead a claim under federal law against the Parking Authority either for its direct role or under a municipal liability theory based on custom and practice or failure to train.

We dismiss his claims against the Parking Authority based upon a *respondeat superior* theory of liability with prejudice. We dismiss the municipal liability claim without prejudice to

consistent with Rule 11. We further dismiss all the Philadelphian's common law claims based on intentional conduct or a negligent hiring theory against the Parking Authority with prejudice as barred by the Pennsylvania General Assembly. We further direct the Philadelphian to clarify whether he wishes to proceed against the enforcement officer who has been sued for months but not served.

## I.    Alleged Facts

Philadelphian Samir Gabis parked his car on Snyder Avenue in South Philadelphia around noon on October 8, 2024.[1] Philadelphia Parking Authority parking enforcement officer Kevin James approached Mr. Gabis and began arguing about whether Mr. Gabis legally parked his car.[2] Officer James, without being provoked, began beating Mr. Gabis, knocking him to the ground and causing injuries to Mr. Gabis's neck, face, mouth, and back.[3] Enforcement Officer James then contacted an unnamed Philadelphia Parking Authority supervisor who arrived on the scene. Enforcement Officer James told the supervisor Mr. Gabis assaulted him.[4] The supervisor, without further investigation, believed Enforcement Officer James's version of the events and called Philadelphia Police.[5]

Philadelphia Police arrested Mr. Gabis based on Enforcement Officer James's version of the altercation.[6] Philadelphia Police obtained surveillance video from a nearby store later the same day. The video captured the altercation.[7] The video showed Enforcement Officer James attacked Mr. Gabis; not as the Philadelphia Police believed based on the Enforcement Officer's story.[8] Philadelphia Police released Mr. Gabis after detaining him for six hours. The Police arrested Enforcement Officer James and charged him with making a false report to police and unsworn falsifications to authorities.[9]

Mr. Gabis sued the Philadelphia Parking Authority, Enforcement Officer James, and John Does, alleging they violated his Fourth, Fifth, and Fourteenth Amendment rights under section

1983, a municipal liability claim against the Parking Authority, Pennsylvania common law claims for malicious prosecution and assault and battery against the Parking Authority and Enforcement Officer James, and negligent hiring and negligence against the Parking Authority only. Mr. Gabis amended his allegations three times; twice in the state court and once here.[10] He still has not served Enforcement Officer James, nor identified the John Does.[11]

## II. Analysis

The Parking Authority moves to dismiss the amended Complaint.[12] The Parking Authority makes two broad arguments: (1) Mr. Gabis does not allege a *Monell* theory of municipal liability;[13] and (2) the Authority is immune from the state law claims under Pennsylvania's Political Subdivision Tort Claims Act.[14]

Mr. Gabis opposes the Motion.[15] He responds he plausibly pleads both a section 1983 claim and a *Monell* claim against the Parking Authority. Mr. Gabis concedes the Parking Authority is immune under Pennsylvania's Political Subdivision Tort Claims Act from state law claims with the exception of a state law claim against Enforcement Officer James's non-party supervisor's negligence "in investigating" Enforcement Officer James's conduct.

Mr. Gabis cannot hold the Parking Authority vicariously liable on a civil rights claim for the conduct of its employees and we dismiss with prejudice a claim against the Parking Authority on this theory. Mr. Gabis does not sufficiently plead a *Monell* claim against the Parking Authority and we dismiss it without prejudice allowing Mr. Gabis one last chance to sufficiently plead a *Monell* claim. The Parking Authority is immune from all pleaded state law tort claims (after three attempts) and we dismiss those claims with prejudice.

### A. Mr. Gabis does not plead a civil rights claim against the Parking Authority.

3

Mr. Gabis asserted two separate civil rights claims against the Parking Authority: (1) a section 1983 claim for Enforcement Officer James's assault, false arrest, malicious prosecution, and the unnamed supervisor's negligent investigation; and (2) a *Monell* claim.

The Parking Authority argues it cannot be held vicariously liable for the conduct of Enforcement Officer James or his unnamed supervisor under section 1983. It concedes it can be held liable under a *Monell* municipal liability theory but argues Mr. Gabis does not sufficiently plead a *Monell* claim.

Congress through section 1983 provides a remedy for a violation of constitutional rights but it is not a source of substantive rights; it is a vehicle to vindicate federal rights "elsewhere conferred."[16] To state a civil rights claim, Mr. Gabis must allege (1) a person acting under color of state law committed the complained-of conduct; and (2) the conduct deprived him of rights, privileges, or immunities secured by the Constitution or laws of the United States.[17]

### 1. The Parking Authority is a local agency in its parking enforcement capacity.

Mr. Gabis contends the Parking Authority is a state agency, regulated by both the Commonwealth and the City of Philadelphia but "primarily by" the Commonwealth.[18] Mr. Gabis argues the Parking Authority is "a state agency and [Enforcement Officer] James was conducting state business" at the time of the assault making the Parking Authority a state actor for purposes of Mr. Gabis's section 1983 claim.[19]

Pennsylvania's General Assembly granted the power to create parking authorities to certain political subdivisions almost eighty years ago.[20] The City of Philadelphia, under the power granted by the General Assembly, established the Philadelphia Parking Authority in 1950 to manage off-street parking and, later, on-street parking.[21] The General Assembly, through the Parking

Authorities Law, established the structures, power, and duties of parking authorities across the Commonwealth, including the Philadelphia Parking Authority.[22]

The General Assembly re-codified and amended the Parking Authorities Law twenty-five years ago establishing different powers and organizational standards for the Philadelphia Parking Authority as compared to parking authorities in other municipalities.[23] One change vested the Philadelphia Parking Authority with the control and regulation of taxis and limousine operations in and out of Philadelphia to any point in the Commonwealth, a function originally reserved in the Public Utilities Commission.[24]

The Pennsylvania Supreme Court in *Blount* sixteen years ago considered whether the Philadelphia Parking Authority is a Commonwealth agency or a local agency for purposes of the original jurisdiction of the Pennsylvania Commonwealth Court. The Pennsylvania Supreme Court held the Philadelphia Parking Authority is a Commonwealth agency—as opposed to a local agency—for purposes of the Commonwealth Court's jurisdiction over disputes relating to the regulation of taxicabs, a function having "statewide impact."[25] The court did not decide whether the Commonwealth Court or the Philadelphia County Court of Common Pleas has original jurisdiction over actions arising out of the Parking Authority's "other functions," like parking operations.[26]

Mr. Gabis's claims have nothing to do with the Parking Authority's regulation of taxicabs in and out of Philadelphia to any point within the Commonwealth, a function the Pennsylvania Supreme Court noted had "statewide impact." We are concerned here with parking enforcement within the City of Philadelphia, which is not a function with statewide impact.

Both before and after *Blount*, courts in this District and Pennsylvania's Commonwealth Court addressed the nature of the Parking Authority for purposes of immunity from state law tort

claims and municipal liability claims under *Monell*. Courts conclude the Parking Authority is a local agency for purposes of immunity when acting within its capacity as parking enforcement in Philadelphia. For example, Judge Pollock nearly forty years ago found the Parking Authority a local agency for purposes of immunity under Pennsylvania's Political Subdivision Tort Claims Act.[27] Judge Robreno, over ten years ago, held the Parking Authority may be liable for alleged Fourteenth Amendment due process violations arising from the Parking Authority's parking enforcement for purposes of municipal liability under *Monell* but not on a *respondeat superior* theory.[28]

The distinction is important because if the Parking Authority is a local agency, it is a "person" capable of being sued under section 1983, but if the Parking Authority is a Commonwealth agency, it is not a "person" under section 1983.[29] We construe Mr. Gabis as pleading a section 1983 claim against the Parking Authority. The Parking Authority concedes it is a local agency potentially liable on a *Monell* theory of liability under section 1983, but argues Mr. Gabis failed to state a *Monell* claim.[30]

### 2. The Parking Authority can only be held liable for its own conduct under *Monell*, not for the conduct of its employee Enforcement Officer James or an unnamed supervisor.

A local agency like the Parking Authority "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory."[31] The Parking Authority may only be liable under section 1983 for injury resulting from a municipal policy, practice, or custom or if it is deliberately indifferent to its stated policy under *Monell*.[32] Liability against the Parking Authority extends only to its own conduct; the Parking Authority cannot be vicariously liable for the conduct of its employees.[33]

Mr. Gabis is trying to plead a section 1983 claim against the Parking Authority seeking to hold it liable for the alleged unconstitutional conduct of Enforcement Officer James and the unnamed supervisor. For example, Mr. Gabis alleges Enforcement Officer James assaulted him followed by Enforcement Officer James and the unnamed supervisor unreasonably seizing and falsely arresting him.[34] We dismiss Mr. Gabis's claim against the Parking Authority to the extent he intended to hold it liable under section 1983 for the conduct of Enforcement Officer James and the unnamed supervisor. The Parking Authority cannot as a matter of law be liable on a *respondeat superior* theory. [35] We dismiss his claim for *respondeat superior* liability with prejudice.

### 3. Mr. Gabis does not state a *Monell* liability claim against the Parking Authority.

The Parking Authority can only be liable if its policy or custom caused the alleged constitutional violation.[36] Far from a model of clarity, we construe Mr. Gabis's allegations as asserting failure-to-train and failure-to-supervise claims against the Parking Authority. Mr. Gabis alleges the Parking Authority "hired, trained, and ostensibly supervised [Enforcement Officer] James" who, when confronted, threw Mr. Gabis to the ground, viciously assaulted him, and attempted to "frame" Mr. Gabis for a felony assault by giving false information to the unnamed supervisor who in turn "failed to investigate the situation," and reported the false information to Philadelphia Police.[37] Mr. Gabis conclusorily alleges the Parking Authority's "customs, patterns, practices, and procedures" caused the violation of his constitutional rights.[38]

The Parking Authority moves to dismiss the *Monell* claim against it arguing Mr. Gabis failed to allege an unconstitutional policy or custom, failed to allege a policymaker's decision caused the constitutional harm, and failed to state a failure-to-train claim.

Our Court of Appeals instructs there are two ways a *Monell* municipal liability claim may proceed: (1) a plaintiff may allege a municipality's unconstitutional policy or custom caused his

injuries; or (2) a plaintiff may allege his injuries were caused by a failure or inadequacy by the municipality reflecting "a deliberate or conscious choice."[39] The second avenue developed in the failure-to-train context and "applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its" employees.[40]

### a. Mr. Gabis does not sufficiently plead a policy-custom claim.

To sufficiently plead a *Monell* claim against the Parking Authority, Mr. Gabis "must identify a custom or policy, and specify what exactly that custom or policy was."[41] A "policy" is made when a "decisionmaker" with "final authority to establish a municipal policy with respect to the action issues an official proclamation, policy, or edict."[42] A "custom" is conduct, not authorized by law, "so permanently and well-settled as to virtually constitute law" and "requires proof of knowledge and acquiescence of the decisionmaker."[43] He must also allege the policy or custom is the "proximate cause" of his injuries by alleging "an affirmative link between the policy or custom and the particular constitutional violation he alleges."[44]

Mr. Gabis offered no plausibly alleged facts the Parking Authority maintained an unconstitutional policy or custom resulting in the deprivation of his constitutional rights. He instead alleges "[a]s a direct and proximate result of the Defendants' unreasonable customs, patterns, practices, and procedures," he suffered a constitutional violation.[45] These conclusions do not plead a claim for *Monell* liability based on a policy or custom.

### b. Mr. Gabis does not sufficiently plead a failure-to-train claim.

Mr. Gabis appears to assert a failure-to-train or inadequate supervision claim against the Parking Authority. A *Monell* claim based on a "municipality's failure or inadequacy in training, supervision, or otherwise is spared from demonstrating the existence of an unconstitutional policy or custom but must make the deliberate indifference showing."[46] Deliberate indifference is

sufficiently pleaded by alleging facts showing (1) the municipal policymakers knew employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employee mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.[47]

Mr. Gabis may plead facts allowing us to plausibly infer deliberate indifference in two ways: (1) a plaintiff must "ordinarily" allege "a pattern of similar constitutional violations by untrained [or unsupervised] employees" putting the municipality on notice; or (2) he may allege "in unusual cases" a "single-incident" without a pattern of earlier constitutional violations.[48]

Mr. Gabis does not allege the "single-incident" theory. He instead proceeds under the "pattern of similar constitutional violations" by untrained or unsupervised employees theory.[49] Mr. Gabis alleges the Parking Authority's "hiring and training" of its employees "has been the subject of criticism for years," citing Pennsylvania's Auditor General's 2017 audit of the Authority after allegations surfaced of sexual harassment of subordinates by then-Executive Director Vince Fenerty.[50] Mr. Gabis alleges the 2017 audit concluded Mr. Fenerty "had virtually unchecked control of personnel matters" and "manipulate[d] leave records, allow[ed] employment policies to not be revised, [did] not provide adequate training to employees, and [exercised] complete control of the hiring of all employees."[51] Mr. Gabis alleges the Parking Authority made "some reforms" such as "publicly posting job openings to the Internet" after Mr. Fenerty's ouster but a 2020 audit by the Controller of the City of Philadelphia revealed "little had changed," including findings the Parking Authority continued a "patronage system to hire employees."[52] Mr. Gabis points to the hiring of employees for internal audit positions without accounting degrees and the lack of written employment practices, at least in 2020.[53]

Mr. Gabis alleges the Parking Authority's "aggressive enforcement of parking" is "legendary," having been the subject of the television show "Parking Wars" from 2008 to 2012 highlighting "angry confrontations between parking enforcement officers and the general public."[54] Mr. Gabis also alleges *The Philadelphia Inquirer* published a series of articles reporting on the assault of Parking Authority employees (not the public) since 2020 and *WHYY* published an article in July 2022 reporting on a "week of de-escalation training being done in conjunction with the Philadelphia Police."[55]

Mr. Gabis, after two tries, does not allege facts allowing us to plausibly infer a nearly ten-year-old audit of former Executive Director Fenerty's conduct, an over five-year-old City Controller audit finding patronage hiring at the Parking Authority, the "Parking Wars" television show, and news reporting on assaults to Parking Authority employees leading to "de-escalation training" (which cuts against Mr. Gabis's failure-to-train allegations) is a "pattern of similar constitutional violations" by untrained or unsupervised employees or how any of these examples have a causal nexus to Enforcement Officer James's assault. Mr. Gabis does not plausibly plead deliberate indifference to support a failure-to-train or supervise *Monell* claim.

We allow Mr. Gabis one last opportunity to plead a *Monell* claim against the Parking Authority if he can do so consistent with Rule 11 and guided, for the first time in this case, by a federal law analysis.

### B. The Parking Authority is immune from Pennsylvania tort claims.

Mr. Gabis asserts Pennsylvania common law claims against the Parking Authority for malicious prosecution, negligent hiring, negligence, and assault and battery. The Parking Authority asserts it is immune from liability under Pennsylvania's Political Subdivision Tort Claims Act. We agree with the Parking Authority.

10

Pennsylvania's General Assembly, through the Political Subdivision Tort Claims Act, extends governmental immunity to local agencies: "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."[56]

The General Assembly carved out exceptions to governmental immunity; a local agency may be liable for injury cause by the "negligent acts" of the local agency or an employee acting within the scope of his "office or duties" in nine specific circumstances: vehicle liability; care, custody or control of personal property; real property; trees, traffic controls and street lighting; utility service facilities; streets; sidewalks; care, custody, or control of animals; and sexual abuse.[57] The Act excludes "acts or conduct which constitutes a crime, actual fraud, actual malice or willful misconduct" from the definition of "negligent acts."[58]

Mr. Gabis did not respond to the Parking Authority's immunity argument under the Act. He instead concedes "the Political Subdivision Tort Claims Act appears to grant the [Parking Authority] immunity for [Enforcement Officer] James's intentional torts" but "not for [Enforcement Officer] James's supervisor's negligence in investigating [Enforcement Officer James's intentional torts]."[59] Having conceded the Parking Authority is immune under the Act, we dismiss all state law claims asserted against the Parking Authority with prejudice.

We reject Mr. Gabis's one-line argument with no supporting authority the Parking Authority is liable for the unnamed supervisor's "negligence in investigating" Enforcement Officer James's intentional torts.[60] The General Assembly through the Political Subdivision Tort Claims Act extends immunity to the Parking Authority for "willful misconduct on the part of local agency employees . . . because liability may be imposed . . . only for negligent acts" within the carved out exceptions and "not . . . willful misconduct."[61] "Willful misconduct" is

11

synonymous with "intentional tort."[62] The General Assembly imposes liability only for "negligent acts" falling within one of the nine enumerated exceptions to local agency immunity in section 8542(b) of the Act, none of which apply in this case.

Mr. Gabis alleges the Authority negligently hired Enforcement Officer James and the unnamed supervisor who "failed to investigate the situation independently" after responding to the scene.[63] Mr. Gabis alleges the supervisor "negligently or recklessly accepted" Enforcement Officer James's "account of the incident without any independent investigation" and contacted Philadelphia Police.[64] Mr. Gabis's claims are based on negligence. None of the negligence claims fall within the nine carved out exceptions to governmental immunity. And the Parking Authority is still immune under the Act even assuming as true Mr. Gabis's allegations the unnamed supervisor acted "recklessly."[65]

Mr. Gabis repeatedly pleads intentional conduct. His attempt at a negligent hiring claim does not meet an exception offered by the General Assembly. All state law claims against the Parking Authority are barred by the Political Subdivision Tort Claims Act. We dismiss the state law claims against the Parking Authority with prejudice.

## III.  Conclusion

Mr. Gabis cannot sue the Philadelphia Parking Authority under a *respondeat superior* theory and may not sue it under Pennsylvania state law claims. We dismiss those claims with prejudice. Mr. Gabis also has not pleaded a claim for *Monell* liability at this stage. We grant him one last leave allowing him to plead a potential municipal liability claim consistent with *Monell* and its progeny with the guidance on federal law offered in this Memorandum. We also direct he advise as to whether he plans to proceed with claims against Enforcement Officer James and John Does within our limited subject matter jurisdiction.

---

[1] ECF 6, Amended Complaint ¶ 7.

[2] *Id.* ¶ 8.

[3] *Id.* ¶ 9.

[4] *Id.* ¶ 10.

[5] *Id.* ¶¶ 10, 63–65.

[6] *Id.* ¶¶ 11, 65.

[7] *Id.* ¶ 12.

[8] *Id.*

[9] *Id.* ¶¶ 13, 65–68.

[10] Mr. Gabis first sued the Parking Authority, Enforcement Officer James, and John Does in the Philadelphia County Court of Common Pleas on August 22, 2025 asserting only state law claims. ECF 1-3 at 3–9 (using the pagination supplied by the CM/ECF docketing system). The Parking Authority filed preliminary objections to Mr. Gabis's complaint, raising its immunity under Pennsylvania's Political Subdivision Tort Claims Act. *Id.* at 19–35. Mr. Gabis filed an amended Complaint in the Philadelphia County action on November 7, 2025 in response to the Parking Authority's preliminary objections. *Id.* at 48–55. Mr. Gabis asserted state law claims and a civil rights claim under 42 U.S.C. § 1983 against all Defendants. *Id.* The Parking Authority removed the action invoking our federal question jurisdiction and moved to dismiss. ECF 5. Mr. Gabis filed an amended Complaint here (ECF 6) representing his third attempt to plead claims.

[11] Mr. Gabis has not filed an affidavit of service confirming service of the Complaint or amended Complaint upon Enforcement Officer James. *See* ECF 1-3 at 16.

[12] ECF 12.

[13] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[14] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility

13

that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that . . . 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' . . . in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations . . . and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]' . . ., we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[15] ECF 16.

[16] *Graham v. Connor*, 490 U.S. 386, 393–94 (1989). Congress through section 1983 provides, in relevant part: "Every person who, under color of any statute . . . of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ." 42 U.S.C. § 1983.

[17] *Schneyder v. Smith*, 653 F.3d 313, 319 (3d Cir. 2011).

[18] ECF 16 at 3.

[19] *Id.*

[20] *Blount v. Phila. Parking Auth.*, 965 A.2d 226, 227–28 (Pa. 2009).

[21] *Id.*

[22] *Id.* at 228.

[23] *Id.*

[24] *Id.* (citing 53 Pa. Cons. Stat. §§ 5505(d)(23), (24)).

[25] *Id.* at 234.

[26] *Id.* at 234 n.16.

---

[27] *Five Star Parking v. Phila. Parking Auth.*, 662 F. Supp. 1053, 1055 (E.D. Pa. 1986); *see also Lewis v. City of Phila. Parking Violations*, No. 23-1649, 2023 WL 3362583, at *2 n. 5 (E.D. Pa. May 9, 2023) (Padova, J.) (dismissing complaint for lack of subject matter jurisdiction, noting the Authority is a "local agency" within the meaning of the Political Subdivision Tort Claims Act and is immune) (quoting *Five Star Parking*, 662 F. Supp. at 1055)); *Hutto v. Phila. Parking Auth.*, 118 A.3d 476, 480 (Pa. Commw. Ct. 2015) (the Parking Authority is a local agency generally immune from civil liability for its employees' actions under Pennsylvania's Political Subdivision Tort Claims Act) (citing *Oliver v. Tropiano Transp., Inc.*, 79 A.3d 1233, 1238 (Pa. Commw. Ct. 2013)); *Sule v. Phila. Parking Auth.*, 26 A.3d 1240, 1240 n.1 (Pa. Commw. Ct. 2011) (the Parking Authority "is a unique agency that functions as a local agency with respect to parking matters, but as a Commonwealth agency in matters involving taxicabs") (quoting *Blount*, 965 A.2d at 234)).

[28] *King v. Phila. Parking Auth.*, 97 F. Supp. 3d 649, 653–54 (E.D. Pa. 2015), *aff'd sub nom*, *King v. City of Phila.*, 654 F. App'x 107 (3d Cir. 2016); *see also Davis v. Doe*, No. 23-4863, 2024 WL 3416256, at *4 (E.D. Pa. July 15, 2024) (dismissing complaint against the Parking Authority for failing to allege constitutional harm resulting from a policy or custom of the Authority) (citing *King*).

[29] *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989).

[30] The Parking Authority also argues it is immune from Mr. Gabis's state law claims under Pennsylvania's Political Subdivision Tort Claims Act because it is a local agency. Mr. Gabis concedes the immunity conferred by the General Assembly grants the Parking Authority immunity from Enforcement Officer James's intentional torts but not for the unnamed supervisor's alleged negligent investigation. We disagree with Mr. Gabis as detailed in this Memorandum.

[31] *Monell*, 436 U.S. at 691 (emphasis in original).

[32] The Supreme Court in *Monell* held "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690 (footnote omitted).

[33] *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citations omitted).

[34] ECF 6 ¶¶ 17, 26–30, 32.

[35] *Hightower v. City of Phila.*, 130 F.4th 352, 355–56 (3d Cir. 2025).

[36] *Connick*, 563 U.S. at 60; *McTernan v. City of York*, 564 F.3d 636, 657 (3d Cir. 2009); *see also Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020) (a municipality is only liable under section 1983 for constitutional violations caused by its official policies and customs) (citations omitted).

[37] ECF 6 ¶ 58.

[38] *Id.* ¶ 59.

[39] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[40] *Id.*

[41] *McTernan*, 564 F.3d at 658 (citation omitted).

[42] *Id.* (internal quotations omitted) (citation omitted).

[43] *Id.* (internal quotations omitted) (citation omitted).

[44] *Est. of Roman*, 914 F.3d at 798 (citation omitted).

[45] ECF 6 ¶ 59.

[46] *Forrest*, 930 F.3d at 117–18.

[47] *Est. of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

[48] *Miller v. City of Phila.*, 162 F.4th 88, 94 (3d Cir. 2025).

[49] Our Court of Appeals recently instructed "single-incident municipal liability is vanishingly rare" requiring "something like giving guns to the police without training them on when they may shoot fleeing felons" and "[n]ot even failing to train prosecutors on their . . . disclosure duties [under *Brady v. Maryland*, 373 U.S. 83, 87 (1963)] is enough." *Miller*, 162 F.4th at 94 (quoting *Hightower*, 130 F.4th at 357).

[50] ECF 6 ¶¶ 39–41.

[51] *Id.* ¶ 42.

[52] *Id.* ¶¶ 43–44.

[53] *Id.* ¶¶ 45–47.

[54] *Id.* ¶ 49.

[55] *Id.* ¶¶ 52–56.

[56] 42 PA. CONS. STAT. ANN. § 8541.

[57] *Id.* § 8542(b).

[58] *Id.* § 8542(a)(2).

[59] ECF 16 at 6.

[60] *Id.*

[61] *Harris v. Krasner*, 110 F.4th 192, 200 (3d Cir. 2024) (quoting *Orange Stones Co. v. City of Reading*, 87 A.3d 1014, 1022 (Pa. Commw. Ct. 2014)).

[62] *Id.* (quoting *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006)).

[63] ECF 6 ¶77.

[64] *Id.* ¶ 64.

[65] *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 287 (3d Cir. 2006).

17