IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SAMIR GABIS | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 25-6703 |
| | : | |
| PHILADELPHIA PARKING | : | |
| AUTHORITY, KEVIN JAMES, JOHN | : | |
| DOES 1-10 | : | |

## MEMORANDUM

**KEARNEY, J.**                                                             **March 24, 2026**

A city agency is not liable under the civil rights laws for its employees' conduct unless the injured person can plead and later show the agency's custom or policy allowed the conduct which caused his harm. We today address a person's third attempt to plead municipal liability claims against the Philadelphia Parking Authority because one of its parking enforcement officers allegedly beat him up and then, along with his supervisor, lied to Philadelphia Police causing his arrest. But he still has not pleaded facts allowing us to plausibly infer the Parking Authority's municipal liability under the civil rights laws for its enforcement officer's conduct. We grant the Parking Authority's motion and dismiss claims against it with prejudice.

## I. Alleged Facts

Philadelphia Parking Authority enforcement officer Kevin James and Philadelphian Samir Gabis disputed a parking space violation on October 8, 2024.[1]

### Enforcement Officer James beats Mr. Gabis up as part of their dispute.

Enforcement Officer James beat up Mr. Gabis during their dispute.[2] Enforcement Officer James contacted his supervisor at the Parking Authority to report the altercation.[3] The unidentified supervisor arrived on the scene to find Mr. Gabis injured and bleeding but no injury to Enforcement

Officer James.[4] Enforcement Officer James told the unidentified supervisor Mr. Gabis attacked him.[5] The unidentified supervisor, believing Enforcement Officer James's version of the altercation, contacted Philadelphia Police.[6] Police officers arrived and arrested Mr. Gabis based on Enforcement Officer James's and the supervisor's identification of Mr. Gabis as the attacker.[7] Mr. Gabis denied wrongdoing.[8] Police released Mr. Gabis from custody hours later after locating video surveillance from a nearby shopkeeper of the altercation showing Enforcement Officer James as the aggressor, not Mr. Gabis.[9] Philadelphia Police later arrested and charged Enforcement Officer James with making a false report to police and unsworn falsification to authorities.[10]

### Mr. Gabis's earlier unsuccessful attempts to plead the Parking Authority's liability.

Mr. Gabis sued Enforcement Officer James, the Parking Authority, and John Does for state law assault and battery, malicious prosecution, negligent hiring, and negligence in the Philadelphia County Court of Common Pleas.[11] The Parking Authority sought dismissal in the Philadelphia County Court of Common Pleas invoking its immunity under Pennsylvania's Political Subdivision Tort Claims Act.[12] Mr. Gabis responded by filing an amended Complaint in the Philadelphia County Court of Common Pleas asserting a civil rights claim against the Parking Authority under section 1983.[13] The Parking Authority then removed the case invoking our federal question jurisdiction.[14]

Mr. Gabis filed an amended Complaint here, asserting a *Monell* claim against the Parking Authority.[15] The Parking Authority moved to dismiss the amended Complaint.[16] We granted the Parking Authority's motion to dismiss, explaining the Parking Authority is only liable for its own conduct under a *Monell* theory of liability and explaining to Mr. Gabis he did not sufficiently plead a policy, custom, or failure-to-train claim against the Parking Authority causing his alleged

constitutional harm.[17] We allowed Mr. Gabis one last opportunity to plead a municipal liability claim consistent with *Monell* and the guidance offered in our Memorandum.[18]

Mr. Gabis filed a second amended Complaint again attempting to plead a municipal liability claim against the Parking Authority.[19]

## II.   Analysis

The Parking Authority now moves to dismiss the amended *Monell* claim.[20] Mr. Gabis opposed the motion, arguing generally the facts of the case are so egregious and the "sheer weight" of Parking Authority's "personnel management problems" should allow him to "open the door" and proceed into discovery even though he does not articulate a plausible theory of municipal liability under *Monell*. Mr. Gabis does not plausibly plead a custom or policy necessary to state a *Monell* claim after studying his third attempt at pleading a claim against the Parking Authority. We today dismiss his second amended Complaint against the Parking Authority with prejudice.[21]

We earlier explained to Mr. Gabis there are two ways a *Monell* municipal liability claim may proceed against the Parking Authority: he may allege (1) the Parking Authority's unconstitutional policy or custom caused his injuries; or (2) his injuries were caused by a failure or inadequacy by the Parking Authority reflecting "a deliberate or conscious choice."[22] The second avenue developed in the failure-to-train context and "applies to other failures and inadequacies by municipalities, including those related to supervision and discipline of its" employees.[23]

Mr. Gabis now appears to proceed under both avenues. He alleges "[i]t is impossible to point … to a written policy or custom that has been violated," suggesting the Parking Authority has an unwritten, unconstitutional policy causing his constitutional harm.[24] Mr. Gabis then confirms his *Monell* claim is based on an "unwritten policy" of the Parking Authority.[25] He also alleges the Parking Authority failed to train and supervise Enforcement Officer James.

### A.  Mr. Gabis fails to plausibly plead a policy with a causal nexus to his constitutional harm for the third time.

The Parking Authority is only liable under the civil rights law for constitutional violations caused by its official policies and customs.[26] A policy does not have to be in writing or passed by a legislative body; an official policy is "[a] pertinent decision by an official with decision-making authority on the subject."[27] Mr. Gabis must allege the Parking Authority's policy caused a constitutional violation. He must also allege a causal link between the execution of the policy and the injury he suffered. The Parking Authority's policy must be the "moving force" behind his alleged constitutional injury.[28]

Mr. Gabis alleges two policies of the Parking Authority caused his constitutional harm: (1) "supervisors are instructed to believe and 'back up' Parking Enforcement Officers" … "on the street by confirming [the Parking Enforcement Officers'] statements, no matter how facially absurd …";[29] and (2) a policy of failing to require body cameras to be worn by its Parking Enforcement Officers.[30] Mr. Gabis alleges these two Parking Authority policies caused the Philadelphia Police to arrest him "without real verifiable probable cause due to the false accusations" of Enforcement Officer James and the supervisor in violation of the Fourth, Fifth, and Fourteenth Amendments.[31]

Neither of Mr. Gabis's theories implicates a right secured by the Constitution or federal law. We assume (solely for purposes of the motion to dismiss) the Parking Authority has a policy instructing supervisors to "believe" or "back up" the statements of Parking Enforcement Officers "no matter how facially absurd" when called to the scene of an incident or altercation with the public. We can find no authority, nor does Mr. Gabis cite authority, recognizing a freestanding constitutional right to have a municipality instruct its supervisory employees to "believe" or "back up" the "statements" of subordinate employees even when "facially absurd." Mr. Gabis does not

4

plausibly allege the instruction to supervisors to "believe" or "back up" subordinate employees is an unconstitutional policy causing a constitutional violation of a federally protected right.

Next, assuming the Parking Authority has a policy of failing to equip its Enforcement Officers with body cameras, there is no constitutional right to body-worn cameras by Parking Authority employees. Our colleagues addressing this issue "universally rejec[t] the theory that a failure to provide or conduct recording of certain law enforcement activities satisfies the constitutional violation, deliberate indifference, or causation requirements of *Monell*."[32] Judge Robreno, for example, rejected a *Monell* theory suggesting the Philadelphia Police Department's practice of not equipping undercover narcotics officers with cameras or recording surveillance equipment is a constitutional violation or shows deliberate indifference by the Department or the causation requirements sufficient for a *Monell* claim.[33] Earlier this month, Circuit Judge Smith dismissed a *Monell* claim based on plaintiff's theory an Altoona Police Department Officer failed to record a search of plaintiff's home in contravention of the Police Department's body-worn camera policy and by failing to record the interrogation of witness used as a confidential informant.[34] Circuit Judge Smith explained there is no freestanding constitutional right, under the Fourteenth Amendment or otherwise, to record police activity.[35] Mr. Gabis does not allege facts allowing us to plausibly infer the Parking Authority's failure to require its Enforcement Officers to wear body cameras is an unconstitutional policy causing a constitutional violation of a federally protected right.

We also see no causal nexus between these alleged policies and his arrest without probable cause. We do not see how the supervisor's adoption of Enforcement Officer James's version of the events or the failure to require Enforcement Officer James to wear a body camera would have

prevented Philadelphia Police Officers from arresting Mr. Gabis. We cannot find these alleged policies somehow duped Philadelphia Police Officers to arrest Mr. Gabis without probable cause.

We dismiss Mr. Gabis's *Monell* claim based on the Parking Authority's alleged policies.

**B.   Mr. Gabis does not plausibly allege a "failure-to" train or supervise claim.**

Mr. Gabis also asserts a "failure-to" train or supervise theory, alleging the Parking Authority "hired, trained, and ostensibly supervised" Enforcement Officer James who, after assaulting Mr. Gabis, "attempted to frame [Mr. Gabis] for felony assault by giving false information to his supervisor, who failed to investigate the situation, and later to the Philadelphia Police."[36]

We already explained to Mr. Gabis a failure-to-train or supervise claim requires a pleading of deliberate indifference by the Parking Authority.[37] Deliberate indifference is sufficiently pleaded by alleging facts showing (1) the municipal policymakers knew employees will confront a particular situation; (2) the situation involves a difficult choice or a history of employee mishandling; and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights.[38]

Mr. Gabis may plead facts allowing us to plausibly infer deliberate indifference in two ways: (1) a plaintiff must "ordinarily" allege "a pattern of similar constitutional violations by untrained [or unsupervised] employees" putting the municipality on notice; or (2) he may allege "in unusual cases" a "single-incident" without a pattern of earlier constitutional violations.[39]

We explained to Mr. Gabis he did not plausibly allege either a pattern of similar constitutional violations by untrained or unsupervised employees or the unusual "single-incident" case putting the Parking Authority on notice of the constitutional violation. We explained Mr. Gabis's reliance on the Parking Authority's "aggressive enforcement of parking" as demonstrated

through the 2008 to 2012 "Parking Wars" television program, articles in the *Philadelphia Inquirer* reporting on the assault of Parking Authority employees, former Executive Director Fenerty's conduct revealed in a 2017 City audit regarding his alleged sexual harassment of subordinate employees, a ten-year old Auditor General's report outlining the alleged patronage hiring system at the Parking Authority, and the Authority's lack of written employment practices or policies did not plausibly allege deliberate indifference by the Authority to support a failure-to-train or supervise claim.

Mr. Gabis did not remedy these pleading deficiencies. He instead chose to rely on the very same allegations to support his failure-to-train claim. The "deliberate indifference" standard in a failure-to-train case is "stringent," requiring the municipal actor to have "disregarded a known or obvious consequence of [its] action."[40] Mr. Gabis does not plausibly allege deliberate indifference. And even if he did, he does not allege how the failure-to-train or supervise Enforcement Officer James proximately caused his constitutional injury. This obligation requires Mr. Gabis to plead facts the deficiency in training or supervising is "closely related to the ultimate injury," meaning his constitutional harm would "have been avoided had [Enforcement Officer James] been trained under a program that was not deficient in the identified respect."[41] Mr. Gabis failed to do so after three attempts to plead a failure-to-train or supervise under *Monell*.

### III.    Conclusion

Our February 5, 2026 Order outlined the deficiencies in Mr. Gabis's amended Complaint attempting to plead a *Monell* claim against the Parking Authority. We granted him one last leave allowing him to plead a claim under *Monell*. He chose to replead essentially the same facts to support his *Monell* claim under the policy or custom theory and the failure-to-train theory. He has not and cannot after three attempts plead facts allowing us to plausibly infer a claim against the

Parking Authority under a *Monell* theory. We grant the Parking Authority's motion and dismiss it from the case.

---

[1] ECF 20 ¶ 7.

[2] *Id.* ¶ 9.

[3] *Id.* ¶¶ 10–11.

[4] *Id.* ¶ 11.

[5] *Id.*

[6] *Id.* ¶ 13.

[7] *Id.*

[8] *Id.* ¶ 14.

[9] *Id.* ¶ 15.

[10] *Id.* ¶ 16.

[11] ECF 1–3.

[12] ECF 1, Notice of Removal ¶ 2.

[13] *Id.* ¶¶ 3, 5; 42 U.S.C. § 1983.

[14] ECF 1 ¶ 6.

[15] ECF 6; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[16] ECF 12.

[17] ECF 17, 18.

[18] *Id.*

[19] ECF 20.

[20] ECF 22.

[21] A complaint must state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the sufficiency of a complaint under the plausibility pleading standard. *Zanetich v. Wal-Mart Stores East, Inc.*, 123 F.4th 128, 138 (3d Cir. 2024). A plaintiff must include "sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Kalu v. Spaulding*, 113 F.4th 311, 325 (3d Cir. 2024) (quoting *Iqbal*, 556 U.S. at 678). "'Plausibly' does not mean 'probably,' but 'it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Smith & Wesson Brands, Inc. v. Estados Unidos Mexicanos*, 605 U.S. 280, 291 (2025) (quoting *Iqbal*, 556 U.S. at 678). A pleading offering "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007)).

Our Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) we "tak[e] note of the elements a plaintiff must plead to state a claim"; (2) we "identify allegations that … 'are not entitled to the assumption of truth' because those allegations 'are no more than conclusion[s]'"; and, (3) "'[w]hen there are well-pleaded factual allegations,' we 'assume their veracity' … in addition to assuming the veracity of 'all reasonable inferences that can be drawn from' those allegations … and, construing the allegations and reasonable inferences 'in the light most favorable to the [plaintiff]'…, we determine whether they 'plausibly give rise to an entitlement to relief.'" *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (internal citations omitted).

[22] *Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (citing *Est. of Roman v. City of Newark*, 914 F.3d 789, 798–99 (3d Cir. 2019)).

[23] *Id.*

[24] ECF 20 ¶ 43.

[25] ECF 23 at 1.

[26] *Porter v. City of Phila.*, 975 F.3d 374, 383 (3d Cir. 2020).

[27] *Id.* (citation omitted).

[28] *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997).

[29] ECF 20 ¶¶ 12, 69.

[30] *Id.* ¶¶ 63–65.

[31] *Id.* ¶ 72.

[32] *Wooden v. City of Phila.*, No. 19-1054, 2022 WL 17724423, at *4 (E.D. Pa. Dec. 15, 2022) (collecting cases).

[33] *Id.*

[34] *Harris v. Trent*, No. 25-19, 2026 WL 575066, at *4–5 (W.D. Pa. Mar. 2, 2026).

[35] *Id.* at *5.

[36] ECF 20 ¶ 71.

[37] *Forrest*, 930 F.3d at 106–07.

[38] *Est. of Roman*, 914 F.3d at 798 (quoting *Doe v. Luzerne Cnty.*, 660 F.3d 169, 180 (3d Cir. 2011)).

[39] *Miller v. City of Phila.*, 162 F.4th 88, 94 (3d Cir. 2025) (citations omitted).

[40] *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 223 (3d Cir. 2014) (quoting *Brown*, 520 U.S. at 410).

[41] *City of Canton v. Harris*, 489 U.S. 378, 391 (1989).